Mr. Perriello? Yes, Judge Dennis. Good morning, Your Honors. May it please the Court. This morning we have a bit of an arbitration doubleheader to close out the day, and both of these cases involve my client, HomeAway. These two cases are related, but they're not identical, and I want briefly to explain the difference. Like every major Internet company, HomeAway uses terms and conditions to govern the use of its website. And like every major Internet company, HomeAway updates and improves those terms and conditions over time. The major factual difference between the two cases that we're going to discuss today, the Arnold case and the Seam case, is that they involve different versions of the terms and conditions. Now, we believe that arbitration is required under both of those terms and conditions, because in fact the arbitration agreements within these two separate terms and conditions are nearly verbatim identical, but the terms and conditions differ in other ways, and it's those differences that kind of distinguish the cases. So that said, the Arnold case. Here's — If you went under your Petrofac argument about the AAA being incorporated and therefore it should have been sent to the arbitrator to decide these issues of arbitrability, that argument applies to both cases? Agreed. Yes. Agreed completely. Is that the first issue we should consider? I mean, I guess we have to consider whether which version, you know, whether it — Yes. That's the first one I'd like to consider with the Court, the delegation question, who decides Mr. Arnold's illusoriness challenge. The other two issues I'd like to address today, just to sort of put some markers down, is what law applies to Mr. Arnold's illusoriness challenge, and then the third question, if we get to it, is whether the Morrison rule that the district court applied in this case is preempted. So to the first question, Judge Costa, who decides here? Mr. Arnold's illusoriness challenge is a defense to the validity of the entire terms and conditions. All of the cases in Texas and from this Court recognize that this sort of illusoriness challenge is in the nature of an affirmative defense, and it applies after a court decides that there has been an enforceable — scratch that — that there has been an existence of an arbitration agreement, and then it turns to the opponent of arbitration to prove — it's his burden to prove — that the other side's promise was illusory. Now that kind of a validity challenge is a pretty run-of-the-mill validity challenge under PrimaPaint and Rena Center, in that it must be specific to the arbitration agreement, or it must be specific to the delegation clause in order for a court to decide this type of illusoriness challenge. Mr. Arnold's illusoriness challenge is not specific to the arbitration agreement, and it's not specific to the delegation clause that the arbitration agreement contains. His theory is this, that there's a modification power located outside the arbitration agreement in part of the terms and conditions, and that — excuse me — that modification power allows HomeAway to make changes to any part of the terms and conditions, including the arbitration agreement. Well, that sort of argument is an argument that the entire terms and conditions is illusory, and therefore, just like this Court held in the Aviles case, this is the kind of illusoriness challenge that must be sent to an arbitrator in the first instance. The district court — don't know why, but the district court didn't address this question of who decides. We briefed it, we argued it, and the district court's decision just assumed that the court had authority to decide this question, and then so went on to the merits of his illusoriness challenge. So we think the court erred simply as a matter of law in not even addressing the threshold question of who decides. And in fact, as a matter of law, this is the kind of defense that must be decided by an arbitrator. Now, if the court believes that this sort of defense needs to be decided by a court, it will raise at least one more and possibly two more questions for your honors. The next of those questions would be, what is the law that applies to Mr. Arnold's defense? The district court applied Texas law. HomeAway contends that California law applies. And the district court's fundamental error was that it misread the choice of law provision in the party's agreement. The subject of that provision is the terms. And as this court held in the Benchmark Electronics case, when a choice of law provision in a contract is limited to the terms, it doesn't matter what law applies to his claims or what law applies to the party's dispute. That's where the district court sort of went awry. The district court said, well, Texas law applies to his dispute, therefore Texas law applies to the interpretation of the terms. But the choice of law provision is limited to the terms and is kind of agnostic on the question of what law applies to the claims that he has brought. And so when you look at the interpretation of the choice of law provision, you know, we concede it's a little bit redundant. It's got some, we would say it's written in plain English. It's meant to be non-technical, non-jargon, non-legalese. For instance, it says these terms are governed by the Federal Arbitration Act and Federal Arbitration Law. And if there's some daylight between those two, I really don't know what it is. But I think the idea is that this is of the choice of law clause, understood by a lay reader, we believe is that residents who make reservations will have, U.S. residents, I should say, who make reservations over a HomeAways website will have the law of their home state applied to them. Well, Mr. Arnold is a U.S. resident who makes reservations. Mr. Arnold's main response to this is simply to just- He puts his house up. Correct. So people like me could go on and make a reservation to stay at his house. Exactly. And the reservations, if you did that, Judge Costa, would be between you as a traveler and Mr. Arnold as the homeowner, it's very clear from paragraph one of HomeAways' terms and conditions that HomeAway does not make reservations. This is not sort of a booking arrangement where someone contacts HomeAway and makes a reservation with HomeAway, who then, you know, facilitates that reservation by providing property. HomeAway is simply an intermediary who allows travelers and members to connect. And so Mr. Arnold does, in fact, make reservations, and the last part of this choice of law clause applies to him. And to sort of look at it another way, if I may, his view renders that entire last clause meaningless and superfluous. He interprets the last clause to say that when someone has a dispute with HomeAway about the choice about reservations, then that person's home state law will apply. But because HomeAway doesn't make reservations, there never will be disputes with HomeAway about reservations. And so we admit that our interpretation renders a couple of these words a little bit inartful. He renders the entire last clause meaningless. And so weighing the superfluities, ours is a little bit lighter and we think the more natural reading. The last question, Your Honor, and I guess I should say that under California law, which is the – Why couldn't, under their reading, someone like the plaintiff in this case, let's say there's a dispute with HomeAway over someone makes a reservation at his house to stay there for a week during the summer. And there's a dispute with HomeAway about that reservation, how much of the money he gets, how much of the money HomeAway gets. And the dispute would be about that reservation as opposed to this dispute, which is about his subscription with the company. So you're hypothesizing that a member sort of sues HomeAway on the theory that HomeAway – No, I'm saying maybe the plaintiff even sues with HomeAway about a dispute about, you know, who gets this. When a reservation gets made, how does the money get allocated? The money goes to HomeAway and then gets sent. Right. So there could be a – he could have a dispute about, oh, you were supposed to send me more of that money when Judge Costa made his reservation. Yeah. I think that it's possible that someone made a – I would say that's probably more a dispute about the fees than the reservation, but it may be how – It rises out of the reservation. How you slice it. Agreed. Agreed. But the way it's written for reservations made by U.S. residents is an attempt by HomeAway just to make clear that international law isn't applying to these terms. And so under California law, which we believe applies pursuant to this choice of law provision, California polices modification powers differently than this court has held Texas does. California applies the covenant of good faith and fair dealing and says that only if someone has a modification power that they use in bad faith or that they use unfairly in that circumstance may there be a problem under the contract. Well, there's no allegation and, in fact, no evidence that HomeAway did that. HomeAway has not modified the arbitration agreement that Mr. Arnold has agreed to, so there can't be a bad faith modification or an unfair modification of it. So under California law as interpreted by the Ninth Circuit, I think the Tompkins case we cite in our brief is an excellent example, this is clearly an enforceable arbitration arrangement. So turning to the last question then, the Morrison rule. This court has never considered whether the Morrison rule comports with the FAA, whether it's preempted. I can't say why, and I won't speculate why, but in May of last year, the Supreme Court decided for the first time that rules of state law that go to the formation of contracts are, in fact, subject to the FAA's preemption rules. That was a case in Evolve Kentucky law where Kentucky had a rule that said agents who have power of attorney can't enter into arbitration agreements absent express authorization, and the Supreme Court rejected the argument that state law which governs formation is somehow beyond the scope of the FAA. So it is now clear since May of this year that state law formation rules can, in fact, be preempted if they are inconsistent with the FAA, if they're hostile to arbitration. What's the name of that case? Kindred Nursing Centers. Kindred. Kindred, K-I-N-D-R-E-D. Cited in our briefs, written by Justice Kagan for a nearly unanimous court. Justice Thomas dissented. Anyhow, the rule that the district court applied here, what we call the Morrison rule, is a rule that automatically invalidates an arbitration agreement whenever one side's commitment to that arbitration agreement is retroactively, unilaterally modifiable without notice, sort of the three-part test that this court articulated in originally in Morrison, applied in Lysale, through the Nelson v. Watch House case last year. But the key part of this rule, the problematic part of this rule, isn't really the three factors. The problematic part of this rule is that it automatically invalidates an arbitration agreement whenever those three factors are met, because in Texas, contracts generally are not automatically invalidated simply because one of the promises is illusory. Texas asks at least two additional questions before coming to the conclusion whether a non-arbitration contract is invalid. And in this court's cases, applying Texas law in those other scenarios have reached the same conclusion, like the Olander case, which involved the covenant not to compete. There might be other considerations. So that's one of the key things. It may be that when the only consideration given by one side is an illusory promise, then the contract would be invalid. But there may be other consideration. There may be money that was paid. There may be non-illusory promises. So the mere fact that one promise of many is illusory does not automatically invalidate a contract generally. I mean, this is an interesting argument you raise. I think, as your brief acknowledges, there's two types of preemption. One is, you know, Texas passes a law directly aimed at an easy case. Yeah. But that's not this. I think you acknowledge that. This is, you know, whether contracts are illusory, I mean, that dates back to the British English common law, and it's in Williston on contracts. It's not made up to — it wasn't made up to defeat arbitration. So then you're sort of in, I guess what I would call this world of effect, something that really is impeding arbitration the way it's being applied. And that's — Concepcion talks about that. But the problem here is, unlike the California law in Concepcion, this is easily dealt with by companies. I mean, we see all the time on this Court arbitration agreements in Texas cases that comply with the Halliburton case, basically, which started this from the Texas Supreme Court. So it's not really — as long as companies follow that, it's not preventing arbitration for any company that just looks at Texas case law and follows the requirements. So how would that fail under this sort of test that looks at, is this really impeding the goals of arbitration? I think under Concepcion, Your Honor, the question isn't so much, what is the effect, but rather, is there a hostility? Is this discriminatory? But what the FAA requires, what Section 2 requires, is that arbitration agreements be treated the same as contracts generally. So even if the rule is easy to satisfy, it is still a rule that does not apply to contracts generally. Arbitration agreements must be the same as any other contract in Texas. And, you know, that's sort of what the Savings Clause means. So I agree with you that we're in Concepcion world. We have — as in Concepcion, it's just unconscionability. And unconscionability can take many forms and have discrete doctrines that are articulated sort of beneath the big umbrella of unconscionability. And so, too, here, there's the umbrella of illusory promises or sufficient consideration. But as that gets refined and crystallized by courts, I think the Morrison Rule, as crystallizing sort of the general illusory promise doctrines, has done so in a way that applies only to arbitration agreements and that automatically invalidates arbitration agreements when a contract generally, a non-arbitration contract generally, would not be automatically invalidated. As I was saying, what Texas generally asks is, is there other consideration? And, you know, did the parties exchange cash? Was there something else that they did? Or there might be a unilateral contract. And we cited a number of cases in our brief, many of which from this court, but I think the highlight of these is the Venegas case from the Texas Supreme Court, where the court said whether a promise was illusory at the time it was made is irrelevant. What matters is whether the promise has become enforceable at the time of the alleged breach. And I think that is essentially the position we're positing to this court. Whether it was illusory at the time that Mr. Arnold entered into the terms and conditions is irrelevant. What happened is the parties agreed, and not just agreed, they performed. Mr. Arnold paid HomeAway money. HomeAway listed his properties on their website. And they did that throughout the duration of 2016. Each side performed in accordance with the duties and responsibilities and rights that the rest of these terms and conditions set down for them to comply with. And, in fact, Mr. Arnold, there should be no dispute that the entire terms and conditions are valid and that, therefore, the arbitration agreement contained within it is also valid. And, in fact, as page 20 of his brief, he admits that he could sue for breach. He's trying to sue for breach because the contract generally is enforceable. This really is an arbitration hostile rule that he is articulating. As he says in his brief, I believe also page 20, the Morrison rule assumes that arbitration agreements are special and peculiar and need some additional protection that contracts generally don't have. In this court, in fact, in the Ramirez case that we cited in our brief, although it wasn't considering preemption, says Morrison is arbitration specific and does not apply to a non-arbitration agreement. That case involved the release of liability. And this court said, yeah, we can't apply it there. Well, that's sort of emblematic of a rule that is preempted. And so, your honors, our view is however you slice this case, whether you come at it through who decides, the delegation clause, or Prima Paine generally, whether you come at it through the choice of law question that the district court clearly got wrong, or whether you come at it through preempting Morrison, the result's the same. Mr. Arnold has to arbitrate this challenge and his claims against Humaway. If there are no further questions, I'll reserve my three minutes for rebuttal. Okay. Thank you, sir. We'll hear next from Mr. Bowes. Bowes. Bowes. Thank you, Your Honor. I'd like to start by backing up a little bit. The argument we just heard from Appellant dealt exclusively with the April 28, 2016, terms and conditions. Their argument is the terms and conditions that were adopted on April 28, 2016, require arbitration in this case. But there's a fundamental problem with that argument. That contract didn't exist when this litigation was filed. This litigation, this action, was filed on April 28, 2016. So the argument is essentially we have the right to unilaterally adopt terms and conditions that change your rights in pending litigation. We have the right to yank a case that is currently pending in Federal court, out of Federal court, and require that pending case, apparently, regardless of the stage it was at. But I thought your client agreed to the April 2016 terms and conditions, didn't he? Well, we do dispute that. So Mr. Arnold has two properties. You essentially enter into agreements with Humaway for the right to list properties individually. He has an issue in this case is a subscription that he entered into back in February of 2016. Later, I think in May or June, I don't remember the date exactly, he renewed a subscription for a different property. But the issue in this case relates to the property and the subscription listing which was purchased in February of 2016 before these terms and conditions existed. But I think the point is that even if the problem is this. Terms and conditions, as these do, say, well, just by virtue of using the website, you agree to these terms and conditions. That's what they say. So the argument is, essentially, if I have a website and I have a document that says if we have disputes, we're going to litigate them in court, you file a case against me, we're litigating in court, and I decide, well, we don't really like the fact that that's in court, we want to have it in arbitration instead, as long as that plaintiff visits that website again, they can bind them to arbitrate that current dispute, remove that, pick that case up out of Federal court and put it in arbitration. And I think there's a problem with that. In fact, there are two problems with that. The first is that there isn't any consideration for an agreement to take pending litigation, a dispute that already exists and is already in litigation, to then take that and move that to arbitration. There's no consideration given for that supposed promise. And there can't be a contract, there can't be an amendment to a contract  that deals with the language of the provision that you're attempting to invoke here. So they're attempting to invoke Section 19 of the April 2016 terms and conditions. Our view is that that provision only applies to disputes that weren't already subject to pending litigation. The reason for that is that the — and I want to be clear about what I'm saying. I'm not saying that it doesn't apply to existing — to disputes that already exist, because it says on its face that it applies to disputes that already existed. My point is it doesn't apply to litigation that's already pending. I think they're two different things. So the reason I think Section 19 of the 2000 — April 2016 terms and conditions can't be interpreted to apply to litigation that's already pending, take that existing litigation and move it into arbitration, is that it doesn't say that it applies to pending litigation. It just doesn't say that. It says it applies to disputes that are already existing, but it doesn't say that it applies to litigation that's already pending, which is something I think very different. The second reason is that the first paragraph of this Section 19 contains a requirement that someone who's going to file, suit, or engage in litigation against Tom Way gives him essentially a 60-day pre-filing informal resolution period. That's part of the deal here, and it's in Section 19. Well, you can't do that if you've already filed a lawsuit. That ship has sailed. So it seems to be the interest to pick that apart and say, well, yeah, we're going to just ignore this part of this new, entirely new provision that didn't exist before. We're going to ignore the 60-day pre-filing informal resolution thing and just look at the arbitration provision. It doesn't make any sense. This is all sort of one parcel. It's all one dispute resolution provision. And if you can't apply that dispute resolution provision under its terms to litigation that's already pending, because you can't give a 60-day informal resolution period to already pending litigation. It just seems to me that this provision can't apply to this litigation at all. So that's, as I said, I wanted to back up, and I think that's the first problem with their argument. But let's put that aside. I mean, I think that controls the issue. It wasn't the grounds on which the district court decided this case. I think it should have been, but it wasn't. The grounds on which the district court decided the case, I think, if this Court doesn't agree with what I just said, although I hope it does because I think it's right, then the issue becomes, well, what about the April 28, 2016 terms and conditions? Well, the first argument we have, the first scuffle we have here is whether Texas law applies or California law applies. And I really don't think this is a complicated question. We'll start with the fact that because this case is pending in the Western District of Texas, there's a presumption, essentially, that Texas law applies. So that's the baseline. We'll start from there. We cited these cases in our brief. We cited the Flayboy case. We cited some others. I won't, unless you want to hear them, I won't tell you the citations again because they're in our brief. So Home Away is attempting to overcome that presumption. And the clause under which they're attempting to do it, this is what it says, and I want to quote it. The terms are governed by the Federal Arbitration Act, the Federal Arbitration law, and for reservations made by U.S. residents, the laws of the State in which your billing address is located. Now, there isn't any argument here, Mr. Arnold's billing address is in California. The problem they have with their argument is the clause that immediately precedes that, where it says, and for reservations made by U.S. residents. Justice Costa, as you pointed out, or was implicit in one of the questions you asked, this case isn't really about reservations that were made. In fact, this case is about a subscription agreement, and in particular, it's about the fact that as a result of changes that Home Away made, there weren't reservations. That's the argument here. That's the entire dispute here. It's, hey, we signed up, we, meaning Mr. Arnold, signed up for this subscription agreement, in a world where the way that the website worked and the way that the transactions worked, there was a reasonable anticipation that there were going to be reservations, and there was a history of reservations on his property. But then as a result of these changes that were made, the reservations dried up and they went away. So you can't say that this case is about reservations by U.S. residents, because it's about the absence of reservations. So that's problem number one. And the second problem is, who is to say that the missing reservations? If you were to look at, okay, so it's about missing reservations. Why is it missing reservations by U.S. residents? Why not missing reservations by Belgian residents or English residents or Mexican residents? It could just as easily be all of those things. There's no basis to say, well, this is only about missing reservations by U.S. residents. You just can't reach that conclusion on this record. So that is why Texas law, not California law, governs it. Now, the next one. And how do you get around Petrofac? That's what I was thinking. That's exactly where I was headed. Yes. So I actually think that that's largely a red herring here for two reasons. It's not the threshold issue of who decides the arbitrability. Well, so this circuit decided a couple of cases in the last couple of years that contain some language on this issue that I think is interesting and important. This year, earlier this year, in IQ Products Company v. WD-40 Company, that's 871 F. 3rd, 344. At pages 348 to 49. Could you say that name again? Sure. It's IQ, like intelligence quotient, IQ Products Company v. WD-40 Company. So at pages 348 to 49, the Court said, and it's talking about agreements to arbitrate, and it says that the first step is a question of contract formation only. Did the parties form a valid agreement to arbitrate some set of claims? And then the Court goes on to say that only if the Court finds there is a valid agreement to arbitrate does it turn to the question whether the parties agreed to delegate arbitrability questions to the arbitrator. And then the other case that I referred to was the 2016 case, which is KUBALA, it's K-U-B-A-L-A, v. Supreme Production Services, which is 830 F. 3rd, 199. It says essentially the same thing. It contains slightly different language, but it says the same thing, that enforcement of an arbitration agreement involves two analytical steps. The first is contract formation, whether the parties entered into any arbitration agreement at all. And the second involves contract interpretation to determine whether the claim is covered by the arbitration agreement. So it really sort of separates these two issues. And I think that this Petrofac issue really goes to the second issue. It's are these claims covered by the arbitration agreement? That's the arbitrability question. But the threshold question, one that the Fifth Circuit has said, I think, properly, has to be decided by the Court in the first instance, is whether there is a valid agreement to arbitrate. And that isn't an issue for the arbitrator. But I think apart from that, sort of the next level of that analysis, is that Texas law, which controls this question of who decides arbitrability, is clear that the mere presence of a statement incorporating the AAA rules isn't enough to confer authority to decide arbitrability to an arbitrator. It's just one factor. And in particular, the Texas courts say, and they're following the Delaware courts, for example, and others. And again, these cases are all cited in their briefs, so I'm not naming the cases, but they're there. The cases say that when an agreement, an arbitration agreement like the one that they're using, doesn't make all claims arbitrable, doesn't subject, upon its face, excuses some set of claims, some group of claims from being arbitrated, you can't send the arbitrability question to the arbitrator in the first instance. It just doesn't make any sense. Because then you've got, here we're talking about small claims. Then you're essentially saying, well, the question is, you know, is this really a small claim? You know, should a dispute arise over whether a small claims case should be arbitrated? Does that get decided by an arbitrator? Well, it shouldn't, because on the face of the contract it says that small claims cases don't get arbitrated. In other cases, ones that the Texas courts talk about are cases where there's an injunctive relief case and other things, or other kinds of claims that are excluded from the arbitration provision. So I think what the cases really stand for is the basic proposition that even if one were to sort of accept as a general statement of law, which the Texas courts reject, but even if one were to accept as a general statement of law that the mere incorporation of AAA rules or statement of AAA rules will apply, can make the question of arbitrability a question for the arbitrator to resolve. That does not apply in cases like this one, where not all claims are subject to arbitration. It just doesn't work. Because, like I said, you're going to run into this question of, well, is this in or out cases that are obviously in, do they really have to go to an arbitrator first to decide that? Is that really disputed here? No. It isn't. It isn't. No, you're right. It isn't. But my point is that they're attempting to evoke essentially a general rule, right? Their argument is the general rule is, the basic statement of the law is, that the fact that the arbitration agreement they're attempting to invoke makes reference to the AAA rules, that's enough. Because the AAA rules say that arbitrability will be decided by the arbitrator, that's enough to require that the arbitrator decide the issue. And my point is that under Texas law, that's not the law. It's not the law at all. And even if it were, at the very most, that statement applies to cases where all claims are subject to arbitration. And the Texas courts say that that doesn't apply. Going back to your earlier point, you cited the Cabala from the Supreme Court, which does say if — I read that to say if there's a question of contract formation, that is, there's a dispute about whether the parties even assented to an agreement, well, you have to decide that in court, because if the parties never agreed to the clause, how could the delegation clause be enforceable? But it draws a distinction between contract formation issues. So, for example, if someone said, oh, I wasn't competent, I was medically incapacitated, I wasn't competent to sign that agreement, well, then you can't hold that person to the delegation clause, because the whole dispute is did they even agree to it. So those formation issues, I agree a court has to decide. But then there's — I think the Supreme Court has contrasted validity challenges, which is, yeah, we entered into this agreement, but it's unconscionable or it's just not valid for some reason. Is this a formation issue or a validity issue? Well, I think it's actually both. As it relates to the arbitration clause, and I know that's an issue that comes up, and I want to be clear that I'm distinguishing, that the arguments that we're making really apply only to the arbitration clause. We're not making some general argument that the entire terms and conditions are illusory and unenforceable. It's the arbitration clause. And our view is that if there's no consideration for a promise, then there isn't a contract that's made. It just doesn't exist, right? So I think in a way it's both. It's both a formation issue and a validity issue. Oh, and then the last thing I wanted to talk about, and I only have a little bit of time left, is this preemption argument. We make this argument in a brief, so I'll be very brief. I'll summarize it very quickly. This issue of illusory contracts and illusory promises and the issue that the law that's being applied here, it's not a law that's uniquely applicable to or uniquely hostile to agreements to arbitrate. As the Court pointed out earlier, this idea of an illusory agreement is a broadly applicable rule of contract law. It's been around for hundreds and hundreds of years. And in fact, we see in Texas law, the Texas Supreme Court talked about this in White v. Centel Cellular, which is 883 Southwest 2nd, 642. The Court said that the promise in the context of an at-will employment relationship that's based on a reciprocal promise of continued employment is illusory, and this is the quote, because it fails to bind the promisor who always retains the option of discontinuing employment in lieu of performance. This is just a general rule, that if a party can essentially unilaterally back out of and not be bound by some provision of a contract or an agreement, then the promise to be bound by that is illusory and there's no consideration. Thank you. Thank you, sir. Thank you, Your Honors. Judge Costa, to pick up on your last question to my colleague, this is clearly a rule of validity and not a rule of formation. Advanced PCS of the Texas Supreme Court at page 607 says that. Amateur Athletic Union from the Texas Court of Appeals last year, pages 106 to 107, says exactly the same thing, that this is a rule of validity. It sort of nominally speaks to formation, but given the fact that it's an affirmative defense, given the fact that it is the burden of the arbitration opponent to carry rather than the burden of the arbitration proponent in demonstrating the existence of agreement, demonstrate that this is the sort of validity defense to which PrimaPaint applies and, indeed, ran a center in the delegation clause. That's why this court, I think in the Aviles case that we cite, in fact when there was a delegation clause, sent exactly this kind of defense to an arbitrator in the first instance. My colleague started off his argument today arguing that the April terms and conditions may not apply to his client, but I think the distinction that he's failing to acknowledge is that his client did agree to these. It would be a different case if the litigation were ongoing and HomeAway simply unilaterally imposed an arbitration agreement on him without any affirmative assent from Mr. Arnold. But, in fact, Mr. Arnold assented. That's what gave us the basis to come into court several months later and ask to move to compel arbitration. Are you just going on the website or do you have to click on, you know, does something pop up? He resubscribed his subscription, and in that whole process, he had to affirmatively assent to the current terms and conditions that had just been released. He resubscribed in May of 2016. After that, my colleague raised several arguments about the scope of the arbitration provision, arguments that I frankly didn't recognize from before, but it doesn't matter because those arguments are all resolved by the delegation clause. If he thinks that something about the first paragraph or the 60 days notice or the fact that the word pending doesn't appear in there is dispositive or material, that's a question the arbitrator can decide in the first instance because the parties have a delegation clause. Now, ultimately, there is a deep irony in Mr. Arnold's case. He clearly expressed a willingness to arbitrate when he resubscribed in April. Now, even if that promise was not immediately enforceable because HomeAway's counter promise was still illusory because there had been no performance, that problem was temporary. HomeAway and he performed. He paid HomeAway. HomeAway listed his properties for the rest of 2016, and thereafter the terms and conditions became valid and enforceable. HomeAway has a modification power, but it never used that modification power in the context of this arbitration agreement. That arbitration agreement, therefore, the one that HomeAway and Mr. Arnold formed by their performance in accordance with the terms and conditions is enforceable. It's twisted, and I think it flips the FAA on its head for Mr. Arnold to try to back out of his promise to arbitrate simply because HomeAway hypothetically and theoretically could have backed out of its promise to arbitrate but never did. For that reason, Your Honors, we ask that the judgment below be reversed.  Thank you, sir.